# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James H. Alesia | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1581 | **DATE** | January 23, 2001 |
| **CASE TITLE** | *Spearman Industries, Inc. vs. St. Paul Fire and Marine Insurance Company* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's Motion *in Limine* No. 1 [23-1] is denied. Plaintiff's Motion *in Limine* No. 2 [24-1] is granted. Defendant's Motion *in Limine* for Count I, Breach of Contract [25-1] is granted in part and denied in part. Defendant's Motion *in Limine* for Count II, Bad Faith [26-1] is granted in part and denied in part. No motions for reconsideration will be entertained.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | | number of notices |
| | Notices mailed by judge's staff. | | JAN 24 2001 |
| | Notified counsel by telephone. | | date docketed |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | | docketing deputy initials |
| | Copy to judge/magistrate judge. | | |
| | | 01 JAN 23 PM 4:40 | date mailed notice |
| CW | courtroom deputy's initials | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SPEARMAN INDUSTRIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 00 C 1581 |
| ) | |
| ST. PAUL FIRE AND MARINE ) | Judge James H. Alesia |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

DOCKETED
JAN 24 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff Spearman Industries, Inc. ("plaintiff") experienced storm damage on the roof of its Lake Bluff Racquet Club in early January 1999 and made a claim under its insurance policy with St. Paul Fire and Marine Insurance Company ("defendant"). Plaintiff maintains its roof was damaged by a winter storm and should be replaced at defendant's cost, while defendant maintains that the damage was caused by wear and tear or deterioration, not by the storm, and is not covered under the insurance policy. Therefore, the dispute in this lawsuit is whether the plaintiff has insurance coverage for all or just a portion of the damage to the roof. Currently before the court are (1) plaintiff's two motions *in limine* and (2) defendant's two motions *in limine*. The court addresses each motion in turn.

### A. Plaintiff's Motions *in Limine*

#### 1. Plaintiff's Motion *in Limine* No. 1

Plaintiff's first motion *in limine* seeks to bar certain opinion testimony of defendant's expert, Timothy J. Dickson ("Dickson"), an engineer retained by defendant to form opinions

regarding damage to the roof. Plaintiff argues that the opinions it seeks to exclude "are not based on any sort of scientific method or, for that matter, on Mr. Dickson's expertise or experience. They are nothing more than his 'bottom line' conclusions, and therefore unreliable." (Pl.'s Mot. at 3.) Defendant, on the other hand, argues that Dickson's opinions are based on his observations of the roof in question as well as his experience and training.

Specifically, plaintiff seeks to exclude two topics from Dickson's testimony. First, plaintiff seeks to exclude from evidence Dickson's opinion "[t]hat it would take hurricane force winds – 120 to 150 miles per hour – to cause insulation to shuffle on this sort of roof, and if it did shuffle in the manner claimed by [plaintiff] the entire roof would have been blown away, and there would be other evidence of structural damage. (Pl.'s Mot. at 1, citing Dickson Dep. at 66-72.) Second, plaintiff seeks to exclude from evidence Dickson's opinion "[t]hat the gaps between the lap seams and alligator cracking were on that roof for 'maybe up to a year', and that the air bubbles had been there at least since the summer of 1998." (Pl.'s Mot. at 2, citing Dickson Dep. at 88-91.)

Federal Rule of Evidence 702 ("Rule 702") governs expert testimony. Effective December 1, 2000, substantial amendments to Rule 702 took place, and the rule reads as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702.

The rejection of expert testimony is the exception rather than the rule, and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." FED. R. EVID. 702 advisory committee's note. Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993). Although the court serves a gate-keeping function, the court's focus is on the expert's methodology, while the "soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) (citing *Daubert*, 509 U.S. at 595).

In this case Dickson has formed an opinion – based on his experience with roofs in general and his inspection of the particular roof in question – as to what caused the damage to the roof. (Dickson's Dep. at 74-91.) It is not this court's job to determine whether his opinion is correct – it is the plaintiff's job to attack the validity of his opinion on cross-examination. *See Smith*, 215 F.3d at 718 (holding that it is not the court's role to decide whether an expert's opinion is correct). Thus, Dickson will be allowed to testify regarding both these opinions. Accordingly, the court denies plaintiff's first motion *in limine*.

2.  **Plaintiff's Motion *in Limine* No. 2**

Plaintiff's second motion *in limine* seeks to bar certain opinion testimony and records of Ron Kurucz and/or RRK & Associates (collectively "Kurucz"). Both parties agree that, in accordance with plaintiff's request, Kurucz, the owner of RRK & Associates, appraised the

3

damage to the roof, but the parties disagree whether plaintiff ever paid or formally retained Kurucz. Plaintiff argues that any opinion of Kurucz is inadmissible under Rule of Civil Procedure 26(b)(4)(B) ("Rule 26(b)(4)(B)") because defendant cannot demonstrate the requisite "exceptional circumstances" under which it is impracticable for defendant to obtain facts or opinions relating to the appraisal of the roof by other means. Defendant argues that Rule 26(b)(4)(B) is inapplicable because plaintiff never retained Kurucz to act as an expert or an appraiser or in anticipation of litigation, and plaintiff never paid Kurucz for any work performed. Defendant also argues, in the alternative, that even if Kurucz was retained as an expert in anticipation of litigation, exceptional circumstances exist because it appears the plaintiff is shopping for an expert.

> Rule 26(b)(4)(B) states:
>
> A party may, through interrogatories or by deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

FED. R. CIV. P. 26(b)(4)(B).

Rule 26(b)(4)(B) concerns experts retained or specially consulted in relation to trial preparations, but it also precludes discovery against experts *merely consulted* in preparation for trial but not retained or specially employed. The advisory committee's note to Rule 26 indicates that the rule's silence regarding experts merely consulted by a party, "precludes discovery against [this class of] experts. ..." FED. R. CIV. P. 26(b)(4)(B) advisory committee's note. Further, courts

have consistently held that a party may not discover the identity of, facts known by, or opinions held by an informally consulted expert. *See, e.g., Cox v. Piper, Jaffray & Hopwood, Inc.*, 848 F.2d 842, 845 (8th Cir. 1988); *USM Corp. v. Am. Aerosols, Inc.*, 631 F.2d 420, 424-25 (6th Cir. 1980); *Ager v. Jane C. Stormont Hosp. and Training Ctr. for Nurses*, 622 F.2d 496, 501 (10th Cir. 1980). Therefore, the key inquiry under Rule 26(b)(4)(B) is whether the consultation took place in anticipation of litigation.

In determining whether an expert was hired in anticipation of litigation, the court must examine "the total factual situation in the particular case." *Hartford Fire Ins. v. Pure Air on the Lake Ltd.*, 154 F.R.D. 202, 207 (N.D. Ind. 1993). To conclude that an expert was hired in anticipation of litigation, a lawsuit need not have been filed, but there must have existed "more than a remote possibility of litigation." *United States v. Bell*, No. C94-20342 RMW, 1994 WL 665295, at *4 (N.D. Cal. Nov. 9, 1994) (internal quotations omitted). In this case, Kurucz appraised the roof damage as part of a dispute resolution process involving two appraisers and an umpire.[1] The fact the parties were involved in an appraisal process and that this appraisal process itself was the subject of litigation shows not only that was there more than a remote possibility of litigation, but also that the parties were actually in the midst of litigation. Thus, Kurucz qualifies as a non-testifying expert consulted in anticipation of litigation or preparation

---

[1]The parties never completed the dispute resolution process because this court held that the dispute regarded causation of the damage rather than the amount of property loss or the value of the property, and that causation is a matter for the courts, not an appraiser, to decide. *Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 109 F. Supp. 2d 905, 907 (N.D. Ill. 2000).

for trial, and only exceptional circumstances would justify admission of the testimony and records of Kurucz under Rule 26(b)(4)(B).[2]

Under Rule 26(b)(4)(B), the party seeking discovery from the non-testifying expert consulted in anticipation of litigation "carries a heavy burden in demonstrating the existence of exceptional circumstances." *Ager,* 622 F.2d at 503 (internal quotations omitted). Exceptional circumstances are shown if the party seeking discovery is unable to obtain equivalent information from other sources. *Eliasen v. Hamilton,* 111 F.R.D. 396, 400 (N.D. Ill. 1986) (internal quotation omitted). The party seeking discovery may meet this exceptional circumstances standard in one of two ways. First, the moving party may show that the object or condition at issue is destroyed or has deteriorated after the non-testifying expert observes it but before the moving party's expert has an opportunity to observe it. *See Disidore v. Mail Contractors of Am., Inc.,* 196 F.R.D. 410, 417 (D. Kan. 2000); *Hartford Fire Ins.,* 154 F.R.D. at 207. Second, the moving party may show there are no other available experts in the same field or subject area. *See Bailey v. Meister Brau, Inc.,* 57 F.R.D. 11, 14 (N.D. Ill. 1972) (party seeking discovery must prove that opinions by others on the subject are unavailable).

Here, defendant fails to allege either that an alteration of the roof prevented it from obtaining necessary information about the condition of the roof, or that there are no other available experts in the same field or subject area. In fact, defendant has substantial information relating to the condition of the roof and the cause of damage. Defendant had ample opportunity

---

[2]The only other exception in Rule 26(b)(4)(B) concerns medical experts under Rule 35(b) and is inapplicable to this case.

to conduct whatever investigations it desired, and the site was inspected by Brian Mager of Starr Roofing and Tim Dickson of Stuart Jacobson & Associates, both hired by defendant. Thus, Kurucz is not the sole source of facts and opinions regarding the cause of damage to the roof. Defendant simply argues that exceptional circumstances exist because plaintiff is shopping for an expert. Even assuming plaintiff chose not to use Kurucz because he rendered an adverse opinion, "this is not only perfectly permissible, but ... the very purpose of [Rule 26(b)(4)(B)] is to protect [a plaintiff] from having [its expert's] testimony used by [its] opponent. ... The Rule was intended to prevent an advisor from becoming an involuntary witness." *Eliasen,* 111 F.R.D. at 401 (internal quotations omitted). Defendant has not met its heavy burden of showing that the present situation qualifies as an exceptional circumstance. Thus, defendant is prohibited from presenting Dickson as a witness.

In addition, the "exceptional circumstances" standard of Rule 26(b)(4)(B) also applies to a non-testifying expert's reports, notes, and records that were developed or acquired in anticipation of litigation. *See, e.g., Braun v. Lorillard, Inc.,* 84 F.3d 230, 235-36 (7th Cir. 1996) (applying "exceptional circumstances" standard to results of tests conducted by plaintiff's expert); *Hartford Fire Ins.,* 154 F.R.D. at 210 (applying "exceptional circumstances" standard to expert's report). Thus, defendant is prohibited from eliciting the testimony or records of Kurucz regarding the opinions he developed or information he acquired in preparing for the appraisal process and in anticipation of litigation.[3] Accordingly, the court grants plaintiff's second motion *in limine*.

---

[3]In addition to its Rule 26(b)(4)(B) argument, plaintiff also argues that any opinion of Kurucz is inadmissible under Federal Rule of Evidence 408 because such opinion was generated
(continued...)

7

However, any opinions or records developed or acquired by Kurucz prior to consultation by plaintiff fall outside the protection of Rule 26(b)(4)(B). *See, e.g., Eliasen,* 111 F.R.D. at 403 (finding no justification for barring testimony concerning facts and opinions not developed in connection with the particular case).

**B.      Defendant's Motions *in Limine***

Defendant has brought two motions *in limine*. Defendant's first motion *in limine* consists of six numbered paragraphs, each seeking to exclude evidence relating to Count I, Breach of Contract. Defendant's second motion *in limine* consists of three numbered paragraphs, each seeking to exclude evidence relating to Count II, Bad Faith.

**1.      Defendant's Motion *in Limine* for Count I – Breach of Contract**

**a.      Paragraphs 1, 2, 3, 4, and 6**

Plaintiff does not object to paragraphs numbered 1, 2, 3, 4, and 6 of defendant's Motion *in Limine* for Count I, Breach of Contract. Thus, the court treats these portions of defendant's motion *in limine* as agreed and grants defendant's motion with respect to these paragraphs.

**b.      Paragraph 5**

Defendant seeks to prohibit any and all mention of settlement discussions between representatives of defendant and plaintiff. First, plaintiff argues that Federal Rule of Evidence 408 states that evidence otherwise inadmissible as part of settlement negotiations is admissible

---

[3](...continued)
in part pursuant to a settlement procedure between the parties. Because the court finds that Rule 26(b)(4)(B) renders inadmissible any opinion or records of Kurucz developed or acquired in anticipation of litigation, there is no need for the court to address plaintiff's argument that Rule 408 renders them inadmissible as well.

8

"when the evidence is offered for another purpose," and that Rule 408 allows a settlement offer into evidence when it is germane to the question of bad faith in delay. FED. R. EVID. 408. Second, plaintiff argues that a statement made by Mr. Button ("Button"), the independent adjuster hired by defendant, is admissible as an exception to the hearsay rule because it is a statement made in Button's representative capacity – as defendant's agent – and with defendant's authorization. (Pl.'s Mot. at 9, citing FED. R. EVID. 812(d)(2)(A), (C) and (D).)

With regard to plaintiff's first argument, the court notes that defendant raises its motion *in limine* to prohibit mention of settlement discussions only with respect to Count I, Breach of Contract, not for Count II, Bad Faith. Thus, plaintiff's first contention – that this evidence is germane to the question of bad faith – is irrelevant. Plaintiff's only relevant argument relates to statements made by Button. The context and circumstances of the settlement discussions between representatives of the plaintiff and defendant are unclear, as is Button's role – if any – in these negotiations. Specifically, the court has insufficient evidence to determine whether Button acted as defendant's agent and with defendant's authorization, and whether Button's statements occurred as part of settlement discussions. Rather than prematurely speculating as to whether such evidence is admissible, the court will reserve ruling until trial. Accordingly, the court denies defendant's motion *in limine* with respect to Button's statements, but grants the motion *in limine* in all other respects. Defendant is not precluded from raising appropriate objections at trial.

2. **Defendant's Motion *in Limine* for Count II – Bad Faith**

    a. **Paragraph 1**

Defendant seeks to prohibit plaintiff's attorney of record, Kevin Moore ("Moore"), from offering testimony as a witness at this trial. Plaintiff responds that it intends to elicit Moore's

9

testimony for the sole purpose of laying the foundation for four letters he wrote to Steve Siemann ("Siemann"), defendant's adjuster. Plaintiff argues that these letters pertain to limited issues on the plaintiff's bad faith claim insofar as the letters establish (1) that plaintiff put defendant on notice of the applicable law and defendant ignored it, and (2) that defendant wrongly and belatedly insisted on participation in an appraisal process, "thereby working unconscionable delay into [plaintiff's] claim." (Pl.'s Mot. at 5.) Because the plaintiff has not named Moore on its witness list, the court is unsure why the defendant brings this motion. Moreover, the court seriously questions the relevancy of these letters to plaintiff's claim. Nevertheless, the court now addresses this motion.

Under the advocate-witness rule, an attorney is barred from acting as both an advocate and a witness in a single proceeding except under special circumstances. *See United States v. Marshall,* 75 F.3d 1097, 1106 (7th Cir. 1996) (internal citations omitted). While allowing a lawyer to testify is a situation to be avoided if possible, the limits on being a lawyer and witness in the same case are not absolute. *See United States v. Johnston,* 690 F.2d 638, 644 (7th Cir. 1982) (en banc). In exercising its discretion to allow or forbid an attorney to appear as a witness, the court should examine the goals sought to be served by the rule against such dual appearances and determine whether the particular situation confronting the court precludes an attorney from appearing as a witness. *See United States v. Morris,* 714 F.2d 669, 671-72 (7th Cir. 1983) (recognizing five rationales for forbidding counsel to appear as witness and stating that "[a] judge is unlikely to be confused by the dual appearance as advocate and witness."); *see also* LOC. R. 83.53.7(a)(2) (a lawyer may testify "if the testimony will relate to a matter of formality and the

lawyer reasonably believes that no substantial evidence will be offered in opposition to the testimony.").

The court will reserve ruling on whether Moore will be allowed to testify on Count II, Bad Faith, for the sole purpose of authenticating four letters he wrote to Siemann. In this case, authentication of the letters is easily available by other means, and the court strongly urges the parties to employ some other means of authenticating these letters. For example, the parties may easily stipulate to the authenticity of these letters, or another witness (*i.e.,* the secretary with initials "kb" who appears to have typed the letters) may be available to authenticate the letters. *See* FED. R. EVID. 901.

In sum, the court grants in part and denies in part defendant's motion *in limine* with respect to Moore's testimony. The motion is granted to the extent that Moore is prohibited from testifying regarding Count I, Breach of Contract, or any substantive evidence relating to Count II, Bad Faith. The motion is denied to the extent that the court reserves ruling until trial to determine whether Moore will be allowed to testify regarding Count II for the sole purpose of authenticating four letters he wrote to Siemann. The court strongly urges the parties utilize an alternative means of authenticating these letters.

### b. Paragraph 2

Defendant seeks to prohibit any and all reference regarding defendant's setting or computation of reserves. Plaintiff agrees that evidence of the reserve should not be admitted to show coverage but should be admissible on defendant's bad faith.

Courts have distinguished between admissibility of evidence of reserves for a bad faith claim in first-party insurance (indemnity insurance) and third-party insurance (liability

11

insurance).[4] *See Am. Prot. Ins. Co. v. Helm Concentrates, Inc.,* 140 F.R.D. 448, 449-50 (E.D. Cal. 1991). In considering a bad faith claim in third-party insurance, the fact that the defendant established a reserve may be probative on the issue of whether there is a *potential* for liability, and thus reserve information may be relevant to the issue of bad faith. *See id.* On the other hand, in first-party insurance, the policy either provides coverage or does not. Thus, the potential for liability – and therefore reserve information – is irrelevant to a bad faith claim. Rather, in first-party insurance, the insurer's good faith is determined (1) by the manner and depth of its investigation, and (2) the determination of whether there was a good faith factual or legal question as to whether the loss was covered. *See id.*

Plaintiff points to no case involving first-party insurance where reserve information is discoverable or admissible, nor does it provide a valid argument why such information would be admissible or probative at trial. Accordingly, the court grants defendant's motion *in limine* with respect to defendant's setting or computation of reserves.

c. **Paragraph 3**

Plaintiff does not object to paragraph number 3 of defendant's second motion *in limine*. Thus, the court treats this portion of defendant's motion *in limine* as agreed and grants defendant's motion with respect to this paragraph.

---

[4]Although neither party uses any of these terms, this is clearly a case of first-party insurance. The term "first-party insurance" or "indemnity insurance" identifies a "policy that applies to oneself or one's own property, such as life insurance, health insurance, disability insurance, and fire insurance." BLACK'S LAW DICTIONARY, 804 (7th ed. 1999). Meanwhile, the term "third-party insurance" or "liability insurance" identifies an "agreement to cover a loss resulting from one's liability to a third party, such as a loss incurred by a driver who injures a pedestrian. The insured's claim under the policy arises once the insured's liability to a third party has been asserted." *Id.* at 806.

## CONCLUSION

For the foregoing reasons, the court grants in part and denies in part plaintiff's motions *in limine*. The court grants in part and denies in part defendant's motions *in limine*.

1. Plaintiff's Motion *in Limine* No. 1 is denied.

2. Plaintiff's Motion *in Limine* No. 2 is granted.

3. Defendant's Motion *in Limine* for Count I, Breach of Contract, is granted with respect to paragraphs 1, 2, 3, 4, and 6.

4. Defendant's Motion *in Limine* for Count I, Breach of Contract, is denied with respect to paragraph 5 insofar as the court reserves ruling until trial to determine whether Button's statement. In all other respects, paragraph 5 of defendant's Motion *in Limine* for Count I, Breach of Contract, is granted.

5. Defendant's Motion *in Limine* for Count II, Bad Faith, is granted with respect to paragraph 1 insofar as Moore is prohibited from testifying regarding any substantive evidence relating to Count II, Bad Faith, but denied insofar as the court reserves ruling until trial to determine whether Moore will be allowed to testify on Count II, Bad Faith, for the sole purpose of authenticating four letters to wrote to Siemann.

6. Defendant's Motion *in Limine* for Count II, Bad Faith, is granted with respect to paragraphs 2 and 3.

Date: **JAN 23 2001**

James H. Alesia
United States District Judge

13