Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James H. Alesia | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 1581 | DATE | April 17, 2001 |
| CASE TITLE | *Spearman Industries, Inc. vs. St. Paul Fire & Marine Insurance Co.* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for reconsideration is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | APR 18 2001 | |
| ✓ | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 APR 17 PM 3:43 | | |
| CW | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice  mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SPEARMAN INDUSTRIES, INC., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 00 C 1581 |
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY, | ) Judge James H. Alesia |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Currently before the court is plaintiff's motion for reconsideration. For the following reasons, the court denies plaintiff's motion for reconsideration.

### I. INTRODUCTION

Familiarity with the court's previous ruling – reported at *Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, No. 00 C 1581, 2001 WL 363492 (N.D. Ill. Apr. 11, 2001) – is assumed. The court will review the facts only as necessary to establish a context for the present motion.

Plaintiff Spearman ("Spearman") has filed a two-count complaint against defendant St. Paul ("St. Paul"). Count I seeks a declaration that Spearman has insurance coverage for damage to its entire roof. Count II seeks punitive damages for St. Paul's alleged bad faith in denying Spearman's claim. On April 10, 2001, the court denied Spearman's motion for summary judgment, denied St. Paul's motion for summary judgment on Count I, and granted St. Paul's motion for partial summary judgment on Count II.



Currently before the court is Spearman's motion for reconsideration. In its motion, Spearman submits that the court (1) denied its motion for summary judgment due to a mistaken notion that there is no precedential support for its position that the theory of proximate cause entitles it to summary judgment and (2) erroneously granted St. Paul's motion for partial summary judgment on Count II because "it is likely the Court did not consider the evidence belying St. Paul's claim of a good-faith dispute, evidence which was emphasized in the Reply." (Pl.'s Mot. Recons. at 4.).

## II. <u>DISCUSSION</u>

Spearman's motion for reconsideration consists entirely of arguments it made earlier that this court already considered in ruling on the parties' cross-motions for summary judgment. These arguments are not appropriate for a motion for reconsideration. *See Fyrnetics (Hong Kong) Ltd. v. Quantum Group, Inc.*, No. 99 C 4704, 2001 WL 40900, at *2 (N.D. Ill. Jan. 11, 2001). *See also Boyd v. Wexler*, No. 00 C 2555, 2001 WL 219623, at *1 (N.D. Ill. Mar. 6, 2001) (stating that "filing a motion to reconsider should not be a 'Pavlovian Response' to an adverse ruling."); *Jefferson v. Sec. Pac. Fin. Servs., Inc.*, 162 F.R.D. 123, 125 (N.D. Ill. 1995) (stating that a motion to reconsider should not seek an "instant replay"); *In re Oil Spill by the "Amoco Cadiz,"* 794 F. Supp. 261, 267 (N.D. Ill. 1992) (stating that a motion to reconsider should not "rehash" old arguments). Rather, "[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (quoted by *Fyrnetics (Hong Kong) Ltd.*, 2001 WL 40900, at *2). Reconsideration is appropriate when "the Court has patently

misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

In this case, Spearman does not present new evidence or suggest that there has been any change in the facts or applicable law since this court's ruling. It does not suggest that this court "patently misunderstood" it or "made a decision outside the adversarial issues presented." Rather, Spearman's motion merely reasserts the arguments and allegations it previously raised in briefing the cross-motions for summary judgment and suggests that, in deciding the parties' cross-motions for summary judgment, this court inadvertently failed to consider these arguments.

Spearman posits two arguments in its motion for reconsideration. First, regarding the court's denial of Spearman's motion for summary judgment, Spearman contends that the court overlooked controlling law. Second, regarding the court's granting of St. Paul's motion for partial summary judgment on Count II, Spearman contends that the court overlooked certain evidence Spearman presented in its reply brief. Although Spearman's arguments are inappropriate for a motion for reconsideration, the court still will address each argument in turn.

A. **Court order denying Spearman's motion for summary judgment**

Spearman moved for summary judgment on Count I of its complaint, arguing that the theory of proximate cause entitled it to judgment as a matter of law. On April 10, 2001, the court rejected that argument and denied Spearman's motion on that basis. In its motion for reconsideration, Spearman submits that the court denied its motion for summary judgment due to a mistaken notion that there is no precedential support in Illinois law for Spearman's position

3

regarding the importation of proximate cause principles into the construction of an insurance contract. Spearman then repeats its discussion of *Mattis v. State Farm*, 454 N.E.2d 1156 (5th Dist. 1983), to support its argument that the theory of proximate cause applies in this case and entitles Spearman to summary judgment.

Also, in a motion to cite additional authority for its motion for reconsideration, Spearman cites as support *Crete-Monee Sch. Dist. 201-U v. Indiana Ins. Co.*, No. 96 C 0275, 2000 WL 1222155 (N.D. Ill. Aug. 22, 2000), for its propositions that *Mattis* is controlling law and that the theory of proximate cause applies in this case and entitles it to relief. While the opinion of another district judge in this circuit can be persuasive, it is not binding precedent on this court. *See Howard v. Wal-Mart Stores, Inc.*, 160 F.3d 358, 359 (7th Cir. 1998) (holding that "a district court's decision does not have precedential authority"); *Malabarba v. Chicago Tribune Co.*, 149 F.3d 690, 697 (7th Cir. 1998) (accord); *Old Republic Ins. Co. v. Chuhak & Tucson, P.C.*, 84 F.3d 998, 1003 (7th Cir. 1996) (holding that "decisions by district judges do not have the force of precedent."). Further, while the facts in *Crete-Monee* are similar to the facts in case at hand, this court finds its reasoning unpersuasive. The court in *Crete-Monee* failed to cite as support any Illinois law besides *Mattis*, failed to distinguish or even mention *Transamerica* and its progeny, and relied instead on several cases applying other state law, including cases applying Wisconsin, West Virginia, and California state law. *Id.* at *8-9. Further, *Crete-Monee* is distinguishable from this case because in *Crete-Monee*, the parties agreed as to the cause of damage to the roof, while in the case at hand there is a genuine issue of material fact regarding the cause of damage to the roof. *Id.* at 7.

4

Contrary to Spearman's argument, the court did consider *Mattis* in denying Spearman's motion for summary judgment. As Spearman points out, in 1983, the Illinois appellate court in *Mattis* stated, "[w]here a policy expressly insures against loss caused by one risk but excludes loss caused by another risk, coverage is extended to a loss caused by the insured risk even though the excluded risk is a contributory cause." *Mattis*, 454 N.E.2d at 1161. However, *Mattis* is not controlling law. As this court stated in denying Spearman's motion for summary judgment based on the theory of proximate cause, the Seventh Circuit recently rejected such an argument and stated that, in Illinois, the importation of tort principles of proximate cause into the construction of insurance policies is inappropriate. *Spearman*, 2001 WL 363492, at *9 (citing *Transamerica Ins. Co. v. South*, 125 F.3d 392, 398 (7th Cir. 1997) (predicting that the Illinois Supreme Court would hold that the importation of tort principles of proximate cause into the construction of insurance policies is inappropriate)).

As a federal court exercising diversity jurisdiction over this Illinois dispute, this court must approach the substantive legal issues guided by Illinois law as announced in relevant statutes and decisions of the Illinois Supreme Court. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). When the state's highest court has not spoken and its appellate courts are in conflict, a federal district court exercising diversity jurisdiction must attempt to predict how the state's highest court would decide the particular issue. *Richard v. Luiensmeyer*, No. 98 C 6409, 1999 WL 261835, at *2 (N.D. Ill. Apr. 12, 1999) (citing *Allen v. Transamerica Ins. Co.*, 128 F.3d 462, 466 (7th Cir. 1997) and *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1301 (7th Cir. 1995)).

5

In this case, the Illinois Supreme Court has not resolved the dispute of whether proximate cause analysis is applicable in the context of insurance contracts. The court's research has not revealed – and the parties have not cited – any Illinois Supreme Court decision addressing this issue. In seeking reconsideration and asserting that Illinois courts have recognized the applicability of proximate cause analysis in the context of insurance contracts, Spearman does not submit an Illinois Supreme Court case on the issue, but rather cites to the same 1983 Illinois Appellate Court decision, *Mattis v. State Farm*, 454 N.E.2d 1156 (5th Dist. 1983), that it cited in support of its summary judgment motion. However, Illinois Appellate Court decisions are not controlling precedent for determining how the Illinois Supreme Court would rule. *Richard*, 1999 WL 261835, at *2. *See also Kaplan v. Pavalon & Gifford*, 12 F.3d 87, 89 (7th Cir. 1993) (holding that "[i]ntermediate appellate court cases are useful but not binding evidence of what the Illinois Supreme Court would do in a similar case."). Also, when state courts of the same level reach opposite conclusions, a federal court in a diversity case is not bound to follow either. *Welge v. Planters Lifesavers Co.*, 17 F.3d 209, 213 (7th Cir. 1994). Therefore, the contrary opinions Spearman cites from Illinois Appellate Courts and from other circuits are not binding on this court.

Despite the fact that the Illinois Supreme Court has not addressed the propriety of proximate cause principles in construing an insurance policy or directly resolved the conflict between Illinois appellate courts, the Seventh Circuit has directly decided this issue. Again, while the Illinois Appellate Courts are not binding on this court, the Seventh Circuit is, and the Seventh

Circuit, applying the Illinois Supreme Court-predictive approach in addressing this very issue, has ruled that,

> ... Illinois case law in the interpretation of insurance exclusions was confusing, with disparate results reached in similar cases. Since that time, Illinois law has been clarified immensely by two recent Illinois appellate court decisions. *Oakley Transport, Inc. v. Zurich Ins. Co.*, 648 N.E.2d 1099 (1st Dist. 1995); *Allstate Ins. Co. v. Smiley*, 659 N.E.2d 1345 (2d Dist. 1995). *We believe the approach of these courts is likely to be followed by the Illinois Supreme Court. These two cases conclude that the importation of tort principles of proximate cause into the construction of insurance policies is inappropriate.* Rather, they suggest, policies should be interpreted in accordance with contract principles, so as to give effect to the intent of the parties. Therefore, policies should be construed according to the plain meaning of the terms used.

*Transamerica*, 125 F.3d at 398 (citing as support its earlier withdrawn opinion) (emphasis added). Further, at least two Illinois appellate court decisions support the position that the importation of tort principles of proximate cause into the construction of insurance policies is inappropriate. *See, e.g., Oakley Transport, Inc. v. Zurich Ins. Co.*, 648 N.E.2d 1099 (1st Dist. 1995); *Allstate Ins. Co. v. Smiley*, 659 N.E.2d 1345 (2d Dist. 1995).

In arguing that *Mattis* – not *Transamerica* – is controlling law, Spearman attempts to distinguish *Transamerica* and its progeny by stating that "there, unlike here, the courts were actually interpreting contract language ... Here, in contrast, the parties do not dispute what is meant by the language in the policy." (Pl.'s Mot. Recons. at 3.)

Contrary to plaintiff's submission, in the present case, the parties indeed dispute what is meant by the language in the policy. Specifically, the parties dispute the language "made worse" in the exclusionary clause of the policy. *See Spearman*, 2001 WL 363492, at *8. In briefing the

7

parties' motions for summary judgment, St. Paul argued that Spearman's loss is uninsurable under the "made worse" language of the exclusionary clause because an excluded source – the wear, tear and deterioration that allegedly existed prior to the storm – contributed to the damage and leaking of the roof. To the contrary, Spearman argued that the exclusionary clause does not include language indicating that an exclusion applies if it contributes concurrently or in any sequence to the loss, and that the "made worse" language indicates that the loss – the damage to the roof causing extensive leaking – must first exist before an excluded source – wear, tear and deterioration – may make it worse. Therefore, here, as in *Transamerica Insurance Co.*, *Oakley Transport*, and *Allstate Insurance Co.*, the parties dispute what is meant by the language of the policy.[1] *See Spearman*, 2001 WL 363492, at *8. Further, all three cases – *Transamerica Insurance Co.*, *Oakley Transport*, and *Allstate Insurance Co.* – were declaratory judgment actions as is the instant case. All involved the construction of an insurance policy exclusionary clause under Illinois law. All questioned the propriety of tort law principles of proximate cause

---

[1] As this court stated in its earlier opinion,
> [t]he court need not decide whether or not the exclusionary clause precludes coverage because ... the court has determined that a genuine issue of material fact exists as to the cause of damage to the roof. In other words, it remains a question of fact whether the storm was the sole cause of damage to the roof or whether the damage was made worse because of wear and tear experienced before the storm.

*Spearman*, 2001 WL 363492, at *8. Again, the court will not determine whether the exclusionary clause precludes coverage at this stage. Count I will be tried as a bench trial, and, as such, the court will make findings of fact and conclusions of law at the time of trial. Once the factual issue of causation is determined, the court will then rule whether the exclusionary clause precludes coverage as a matter of law.

8

into the construction of insurance policies. Therefore, Spearman's attempt to distinguish this line of cases is unpersuasive.

In sum, having reviewed the relevant authorities – including *Mattis* – and considered Spearman's arguments, this court follows Seventh Circuit precedent set forth in *Transamerica* in predicting that the Illinois Supreme Court would hold that "the importation of tort principles of proximate cause into the construction of insurance policies is inappropriate." *Transamerica*, 125 F.3d at 398. Accordingly, the court denies Spearman's motion for reconsideration regarding the court's denial of Spearman's motion for summary judgment.

**B.** <u>**Court order granting St. Paul's motion for partial summary judgment on Count II**</u>

In its motion for reconsideration, Spearman also submits that in granting St. Paul's motion for partial summary judgment on Count II, the bad faith count, the court "inadvertently failed to consider Spearman Industries [sic] contention that this was more than a bona fide dispute ...." (Pl.'s Mot. Recons. at 4.) In furthering this argument, Spearman suggests that "the Court was unaware of Spearman Industries' Reply" and "it is likely the Court did not consider the evidence belying St. Paul's claim of a good-faith dispute, evidence which was emphasized in the Reply. The Court never mentioned this evidence, in any event." (*Id.*)

Spearman then repeats again the evidence it presented in opposition to St. Paul's motion for summary judgment and repeats its argument that St. Paul had little or no basis to deny this claim worth nearly $250,000 because it had no evidence that damage existed before the storm. Specifically, Spearman repeats its allegations that (1) St. Paul declined its claim before its in-house adjuster had seen the damage and at a time when all those who offered their opinions,

including St. Paul's own retained outside adjuster, had concluded the damage was storm-related; (2) none of the experts St. Paul retained after declining coverage correlated signs of wear and tear to any leaking at the facility; (3) the documentary evidence St. Paul uses to substantiate wear and tear damage is restricted to the valley and the flat roof and have nothing to do with the gabled roofs; (4) St. Paul admitted that it had no evidence that before the storm the roofs exhibited damage or that the roofs leaked before the storm; (5) St. Paul's experts admitted they could have cut away part of the roof to seek staining evidence of longstanding leaking; and (6) St. Paul admitted it had no evidence to refute that the roofs began to leak immediately after the storm. (Pl.'s Mot. Recons. at 4-5.)

Again, contrary to Spearman's allegation, the court did consider this evidence in granting St. Paul's motion for partial summary judgment on Count II. Spearman suggests that the court did not take into account this evidence because this evidence was not discussed in the earlier opinion. (Pl.'s Mot. Recons. at 4.) Spearman is correct that the court did not specifically discuss each piece of evidence Spearman set forth. Specifically addressing this evidence was unnecessary considering the clear law regarding bad faith claims in insurance disputes. Glaringly absent from Spearman's motion for reconsideration is a discussion of the controlling law regarding bad faith claims in insurance contracts. *See Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000) (setting forth the controlling law regarding bad faith claims in insurance disputes). Although the court already articulated this

10

standard and applied it to this case in its earlier opinion, *Spearman*, 2001 WL 363492, at *9-10, the court will reiterate its analysis in an effort to clarify the law for Spearman.[2]

Count II alleges that St. Paul acted vexatiously and unreasonably in denying coverage to Spearman under § 155 of the Illinois Insurance Code and pertains solely to the way St. Paul handled the claim, not to the timeliness of St. Paul's conduct. *Spearman*, 2001 WL 363492, at *10 (citing 215 ILL. COMP. STAT. 5/155 ("§ 155")). It bears repeating that the Seventh Circuit has clearly set forth the standard regarding the determination of vexatious or unreasonable conduct under § 155. An insurer's conduct is not "vexatious and unreasonable" if: (1) there is a bona fide dispute concerning the scope and application of insurance coverage, (2) the insurer asserts a legitimate policy defense, (3) the claim presents a genuine legal or factual issue regarding coverage, or (4) the insurer takes a reasonable legal position on an unsettled issue of law. *Citizens First Nat'l Bank of Princeton*, 200 F.3d at 1110.

Again, while there is no issue of material fact regarding St. Paul's behavior in conducting its investigation and litigation of this claim, there is a genuine issue of fact regarding the cause of damage to the roof. *See Spearman*, 2001 WL 363492, at *7 (finding that a genuine issue of material fact exists as to the actual cause of damage to the roof). The heart of this coverage

---

[2]Further, the court finds that Spearman's arguments are unpersuasive, not supported by the record, and at times a misstatement of the evidence. First, before St. Paul declined coverage, Brian Mager, a roofer, inspected the roof in mid-March and advised St. Paul that wear and tear contributed to the loss. Second, Brian Mager and Tim Dickson have both stated that damage was caused – at least in part – by wear and tear. Third, St. Paul does present documentary evidence of wear and tear in the Gabled Roof. Fourth, St. Paul has presented deposition testimony from Spearman's own employees demonstrating that the roof leaked before the storm. Finally, the remaining evidence cited by Spearman is not relevant to whether or not there was a bona fide dispute.

11

dispute goes to causation. Spearman has presented evidence by way of testimony, documents, and photographs to demonstrate that there is a dispute. Thus, St. Paul presents a genuine factual issue and legitimate policy defense, and there is a bona fide dispute concerning the scope and application of insurance coverage." *Spearman*, 2001 WL 363492 at *10. Further, the very fact that this court, an independent tribunal, has reviewed the evidence and determined that a genuine issue of material fact exists regarding causation and coverage serves as further evidence that this case involves a bona fide dispute as to coverage. St. Paul should not be penalized for seeking a judicial resolution of this bona fide dispute. This court finds that there is a bona fide dispute, and defendant's refusal to pay was not vexatious and unreasonable. That, in and of itself, is enough to deny Spearman's claim for bad faith. Spearman's arguments in its motion for reconsideration do not defeat the fact that – as a matter of law – a bona fide dispute concerning the scope and application of insurance coverage is *in and of itself* enough to defeat a bad-faith claim. *Citizens First Nat'l Bank of Princeton*, 200 F.3d at 1110. Not only are Spearman's arguments regarding Count II repeated nearly verbatim from its earlier arguments and, therefore, inappropriate for a motion for reconsideration, but also Spearman is incorrect in arguing that its allegations defeat the controlling law regarding bad faith claims in insurance contracts.

As this court stated in its earlier opinion, St. Paul presents a genuine factual issue and legitimate policy defense, there is a bona fide dispute concerning the scope and application of insurance coverage, and Spearman fails to present sufficient evidence to establish that St. Paul did anything more than have an honest dispute concerning its legal liability to Spearman under the insurance policy at issue. *Spearman*, 2001 WL 363492, at *10. An honest dispute as to the

12

legal obligations of the parties does not qualify as bad fad faith. *Id.* (citing *Platinum Tech., Inc. v. Fed. Ins. Co.*, No. 99 C 7378, 2001 WL 109814, at *10 (N.D. Ill. Feb. 2, 2001)). Here, there is no evidence of bad faith, vexatious behavior, or unreasonableness on the part of St. Paul concerning its investigation, litigation, and denial of this claim, and therefore summary judgment on Count II in favor of St. Paul is necessary as a matter of law.

In sum, contrary to Spearman's submission, the court indeed considered the evidence Spearman set forth in its reply brief in granting St. Paul's motion for partial summary judgment on Count II. The court denies Spearman's motion for reconsideration regarding the court's granting of St. Paul's motion for summary judgment on the bad faith claim.

### III. CONCLUSION

For the foregoing reasons, the court denies Spearman's motion for reconsideration.

**APR 17 2001**
Date

James H. Alesia
United States District Judge